UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

              -against-

VITO CORTESIANO,

              Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CR-0005 (S-1) (SLT)

**TOWNES, United States District Judge:**

    Defendant Vito Cortesiano ("Defendant") is one of several men charged in the above-referenced indictment with a single count of racketeering conspiracy in violation of 18 U.S.C. §1962(d). In that count, the superceding indictment in this case charges that Defendant was an associate in the Gambino crime family (the "Family") and conspired with four other members of the Family to violate that portion of 18 U.S.C. §1962(c) which makes it unlawful "to conduct or participate, directly or indirectly, in the conduct of [a criminal] enterprise's affairs through a pattern of racketeering activity."

    As used in section 1962(c), a "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. §1961(5). The superceding indictment alleges nine racketeering acts, two of which involve Defendant. Racketeering Act Four alleges that in or about and between January 1990 and January 2011, Defendant and two co-defendants – Bartolomeo Vernace and Michael Dolphin – together with others, conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling operation in a café at Cooper and Myrtle Avenues in Queens, which operation involved the use of joker-poker-type gambling machines. Racketeering Act Seven alleges that in or about and between October 1990 and January 2003, Defendant and three co-defendants – Bartolomeo Vernace, Anthony Vaglica, and

Robert Wehnert – together with others, conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business that operated a seasonal bacarrat game.

The remaining seven racketeering acts involve other defendants. For example, Racketeering Act One charges that, in 1981, Mr. Vernace conspired with unspecified others to distribute and possess with intent to distribute heroin, and did distribute and possess with intent to distribute heroin. Racketeering Acts Two and Three allege that, in April 1981, Mr. Vernace conspired with unspecified others to commit, and committed, the murders of John D'Agnese and Richard Godkin, respectively. In addition, Mr. Vernace alone is named in the second count, charging him with brandishing and discharging a firearm during and in relation to the racketeering conspiracy charged in Count One.

Defendant now moves (1) for a bill of particulars, (2) to strike Defendant's alleged alias, "Vito Love," from the indictment, (3) to sever Defendant's trial from that of his co-defendants, and (4) for an order directing that the government immediately provide Defendant with various types of discovery. Defendant's arguments and the government's responses thereto are discussed in more detail below.

## DISCUSSION

### 1. Bill of Particulars

In his request for a bill of particulars, Defendant does not express any confusion regarding the nature of the charges against him. Rather, Defendant seeks details relating to various portions of the superceding indictment. First, noting that Count One and Racketeering Acts Four and Seven allege that crimes were committed by Defendant and his co-defendants, "together with others," Defendant seeks disclosure of the identity of these "others." Second, Defendant seeks an order directing the government to state "[w]hether or not [Defendant] conducted, managed,

supervised, directed or owned all of [*sic*] part of the respective operations in Racketeering Acts Four and Seven and to what Extent." Memorandum in Support of Motion for a Bill of Particulars ("Bill of Particulars Memo") at 2.[1] In addition, Defendant seeks a list of the dates of Defendant's alleged involvement in the illegal gambling businesses referenced in Racketeering Acts Four and Seven, as well as the dates and locations of the "seasonal baccarat game" referenced in Racketeering Act Seven. In response, the government argues that the allegations in the complaint satisfy the requirements of Fed. R. Crim. P. 7(c) and that Defendant is attempting to discover "the government's theory of the case and the evidence it intends to introduce at trial." Government's Memorandum in Response to the Defendants' Pre-trial Motions ("Gov't Memo") at 89.

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." However, an indictment is not required to develop in great detail the nature of each defendant's participation in a charged conspiracy. *See United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975). Indeed, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.* (citing cases).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that a "court may direct the government to file a bill of particulars." The rule itself provides no guidance as to when a bill of particulars should be granted. *United States v. Galestro*, No. 06-CR-285 (ARR), 2008 WL

---

[1]The pages of this submission and Defendant's other submissions are not numbered. Accordingly, in citing to pages in Defendant's submissions, this Court refers to the page numbers assigned by the Court's Electronic Case Filing system ("ECF").

2783360, at *8 (E.D.N.Y. July 15, 2008). However, the Second Circuit has held that "[a] bill is appropriate to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)). The decision as to whether to grant a defendant's request for a bill of particulars rests "within the sound discretion of the district court." *Id.* (citing *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)).

"The principles governing requests for a bill of particulars are well settled." *Id.* "To obtain a bill of particulars, the defendant must show that the charges of the indictment are so general that they do not advise him of the specific acts of which he is accused." *United States v. Guerrero*, 669 F. Supp. 2d 417, 426 (S.D.N.Y. 2009) (citing *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574. "[A] defendant may not employ a bill of particulars as a general investigative tool," and a bill of particulars "will not be issued simply to force the Government to particularize all of its evidence." *Guerrero*, 669 F. Supp. 2d at 426 (internal quotations and citations omitted). Indeed, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *Id.* (quoting *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y.2001)).

In this case, the government has already provided sufficient information regarding the specific acts of which Defendant is accused. The government has provided the approximate

4

dates during which the illegal gambling businesses operated, some of the other individuals involved in the operation of those businesses, and the nature of the games involved. What Defendant now seeks is specific information regarding exactly where and when the gambling businesses operated, a list of every other person involved in those operations, and other details relating to the operation. The government is not required to provide this level of specificity. *See Guerrero*, 669 F. Supp. 2d 417, 426; *Trippe*, 171 F. Supp. 2d at 240. Since the information provided by the government is adequate to permit Defendant to identify with sufficient particularity the nature of the charge pending against him, Defendant's request for a bill of particulars is denied.

### *2. Motion to Strike Alias*

Rule 7(d) of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment . . . ." However, "[m]otions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990)).

In arguing that this Court should strike his alias, Defendant speculates that "[t]he only reason the government wants to include aliases when presenting the indictment to the jury is to indicate that people who use aliases are inherently untrustworthy and engaged in questionable activities . . . ." Defendant's Motion to Strike Alias with Incorporated Memorandum of Law at 4. In response, the government states that the café mentioned in Racketeering Act Four, in which the joker-poker-type gambling machines operated, was once known as "Café Love." Gov't

Memo at 81. The government intends to argue that this name made "reference to [Defendant's] alias, Vito Love." *Id.* Since Defendant's nickname may be relevant to the issue of whether Defendant was an owner of the café, Defendant's motion to strike the nickname "Vito Love" from the indictment is denied. *See Mulder*, 273 F.3d at 99; *Scarpa*, 913 F.2d at 1013.

## *3. Misjoinder and Severance*

Defendant's motion to sever contains the germ of two separate arguments. First, Defendant argues that the superceding indictment is "fatally flawed and infected with misjoinder of defendants charged in separate counts." Memorandum in Support of Motion to Sever Defendant ("Severance Memo") at 5. Specifically, Defendant asserts that "different defendants committed or conspired to engage in murder, extortionate extension of credit, etc. on different dates with no transactional nexus between those alleged acts of violence" and the illegal gambling offenses allegedly involving Defendant. Second, Defendant moves for severance on three separate theories, alleging spillover prejudice, antagonistic defenses and *Bruton* issues.

### *A. Misjoinder*

The first of these arguments does not require extensive discussion. Rule 8(b) of the Federal Rules of Criminal Procedure provides that an indictment may jointly charge multiple defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." In this case, Defendant is not only charged with the exact same offense as his co-defendants, but with the same Racketeering Acts. Indeed, Messrs. Vernace and Dolphin are alleged to have been involved in the "joker poker" business that is the subject of Racketeering Act Four and all of Defendant's co-defendants other than Dolphin are alleged to have been involved in the seasonal baccarat games. Although

plaintiff may not have been involved in the RICO conspiracy or the illegal gambling operations for as long as his co-defendants, all of the co-defendants allegedly participated in one or both of the "series of acts or transactions" with which Defendant is charged. Accordingly, Defendant's misjoinder argument is entirely without merit.

## B. Severance

In the second of the arguments, Defendant urges this Court to exercise its discretion under Fed. R. Crim. P. 14 to sever his trial from that of his co-defendants. Rule 14(a) authorizes severance "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." The decision regarding whether to grant or deny a severance is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir.1989). However, since joint trials "play a vital role in the criminal justice system" because they both promote efficiency and avoid the possibility of inconsistent verdicts, the Supreme Court has expressed "a preference . . . for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy . . . ." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

Severance may be appropriate for a number of reasons, and Defendant advances three of those reasons: spillover prejudice, antagonistic defenses, and *Bruton* concerns. With respect to the first of the three, severance may be appropriate "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (per curiam). However, "[a] defendant's claim that he was prejudiced by the admission of evidence at a joint conspiracy

7

trial is insupportable when the evidence would have been admissible against him in a separate trial alone as a member of the conspiracy." *Id.* (citing *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). As the Second Circuit explained:

> A defendant's right to a fair trial does not include the right to exclude relevant and competent evidence. Thus, the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately. Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.

*Rosa*, 11 F.3d at 341.

The Second Circuit has repeatedly held that proof of crimes committed by other participants in a RICO conspiracy is relevant to show the existence and nature of the enterprise. *See, e.g., United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994); *United States v. DiNome*, 954 F.2d 839, 843-44 (2d Cir. 1992). Even the introduction of evidence of murders committed by RICO co-conspirators does not create substantial spillover prejudice for a defendant not charged with those murders. *See United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999) (evidence that RICO co-conspirators committed eight murders and other acts of violence, sold narcotics, and maintained and shared weapons for use in their criminal activities did not create substantial spillover prejudice for defendant, who was charged with a single, unrelated murder); *Brady*, 26 F.3d 282, 287 (holding that there was no prejudice from admission of evidence regarding murders as background evidence).

In this case, the proof of the racketeering acts committed by Defendant's alleged co-conspirators would be relevant to show the existence and nature of the alleged criminal

enterprise. Thus, proof of the acts unrelated to the illegal gambling businesses – including proof that Mr. Vernace committed murders, sold narcotics, and brandished and discharged a firearm in furtherance of Family business – would be relevant in Defendant's case, even if he were tried separately from the co-defendants. Accordingly, this Court, in its discretion, finds that no substantial spillover prejudice will result from trying Defendant and his co-defendants together. This Court will give an appropriate charge to limit any possible prejudice to Defendant and will afford Defendant an opportunity to submit proposed limiting language.

A second reason for granting severance is the existence of antagonistic defenses. However, "[a] simple showing of some antagonism between defendants' theories of defense does not require severance." *United States v. Carpentier*, 689 F.2d 21, 27-28 (2d Cir. 1982). In order to make a showing of "mutually antagonistic" or "irreconcilable defenses," a defendant "must make a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of the other." *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir.1998) (internal quotation marks and brackets omitted).

In this case, Defendant does not make the requisite showing. Defendant indicates that he intends to argue that he was not old enough to participate in the conspiracy from its inception. Even assuming this was a viable defense to a conspiracy charge, *cf. United States v. Miranda-Ortiz*, 926 F.2d 172, 177-178 (2d Cir. 1991) (a defendant's participation in a single transaction at the very end of the conspiracy may suffice to sustain a charge of knowing participation in an existing conspiracy), Defendant does not explain how acceptance of this defense would preclude the acquittal of his co-defendants. Rather, Defendant merely represents that Mr. Vernace, having known Defendant when Defendant was young, could attest to the fact that Defendant was not a

member of the conspiracy from the beginning. However, Defendant could easily establish his age through other means, and does not assert that Mr. Vernace or any other co-defendants are prepared to testify that Defendant was never a member of the conspiracy. Moreover, this does not appear to be a case like *DeLuna v. United States*, 308 F.2d 140 (5th Cir. 1962), in which the silence of a co-defendant would be exculpatory.

Similarly, Defendant has not established that there is a *Bruton* issue in this case. To the contrary, Defendant states that because the government has not provided information regarding informants and cooperators, he is "not aware of whether or not any . . . 'other persons' or unindicted coconspirators confessed to . . . the conspiracy . . . or if they provided information that [he] knowingly joined the conspiracy . . . ." Severance Memo at 7. Since it is readily apparent that Defendant's *Bruton* argument is based on mere speculation, it is denied without prejudice to renewal once Defendant learns if any of his co-defendants have made any statements.

### 4. Discovery Requests

Defendant also seeks an order compelling the government to produce immediately all *Brady* and *Giglio* material, and to disclose all Jencks Act material "early." In addition, Defendant seeks (1) notes of law-enforcement agents taken during interviews of potential witnesses, (2) the identity of any expert witnesses, and the information, studies and reports on which their opinions will be based, and (3) Rule 404(b) notice regarding the "other crimes" evidence that the government will seek to introduce if Defendant takes the stand.

In response, the government argues that Defendant's application is premature and/or unnecessary. The government represents that it is "aware of its obligations under *Brady* and *Giglio* and has advised the defendants that it will comply with those obligations." Gov't Memo

at 68. The government further states that it is aware of its obligations under the Jencks Act, and its obligation to preserve and disclose notes taken during its interviews with witnesses. Finally, the government states that it also aware of its obligations under Fed. R. Civ. P. 16 regarding expert disclosure, and will provide reasonable notice pursuant to Rule 404(b).

Based on the government's assurances, this Court agrees with the government that Defendant's applications are premature and unnecessary. First, the government's opposition papers satisfy the Court that the government has a firm grasp on its obligations under *Brady* and *Giglio*. This Court trusts that the government is fully aware that such materials "must be disclosed 'in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial.'" *United States v. Rittweger*, 524 F.3d 171, 180 (2d Cir. 2008) (quoting *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2008)). In addition, the Court recognizes that "[i]t is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made." *Id.* at 180-81 (quoting *United States v. Leka*, 257 F.3d 89, 100 (2d Cir. 2001)).

Second, the Jencks Act, 18 U.S.C. §3500, was enacted, in part, "to clarify that the Government need not disclose such statements to the defense until after the Government witness has testified against the defendant on direct examination in open court." *United States v. Coppa*, 267 F.3d 132, 145 n. 10 (2d Cir. 1991). Accordingly, the Second Circuit has repeatedly held that the Jencks Act "prohibits a District Court from ordering the pretrial disclosure of witness

statements." *Id.* at 145 (citing cases). Defendant's request for "early" disclosure of Jenck's Act material is, therefore, denied.

This Court is also satisfied that the government is aware of its obligations under Fed. R. Crim P. 16. Rule 16(a)(1)(A) provides that "[u]pon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Rule 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." The government assures the Court that, in light of Defendant's requests, it will comply with its obligations under Rule 16(a)(1)(A), and will provide the information required under Rule 16(a)(1)(G) in a timely fashion.

Finally, the government appears to be well familiar with the requirements of Fed. R. Evid. 404(b). This rule provides, in pertinent part, that '[o]n request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . ." The government specifically notes that "[c]ourts in the Second Circuit have repeatedly interpreted the 'reasonable notice in advance of trial' requirement of Rule 404(b) to require disclosure two weeks prior to trial." Gov't Memo at 59 n. 16 (citing cases). Accordingly, there is no need for this Court to take any action in response to Defendant's Rule 404(b) request – or Defendant's other discovery requests – at this juncture.

## 5. Co-Defendant's Motions

Defendant joins his co-defendant Robert Wenhert's motion to dismiss the case against him pursuant to Rule 6 (b)(2) of the Federal Rules of Criminal Procedure on the grounds that there were irregularities with the grand jury. That motion is denied for the reasons set forth in the Memorandum and Order in *United States v. Wenhert*, decided herewith.

## CONCLUSION

For the reasons set forth above, Defendant Vito Cortesiano's pretrial motions are denied.

**SO ORDERED.**

                               S/
                            SANDRA L. TOWNES
                            United States District Judge

Dated: April 26, 2012
       Brooklyn, New York